## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**CLIFTON BELTON, JR., ET AL.**                    **CIVIL ACTION**

**VERSUS**

**SHERIFF SID GAUTREAUX, ET AL.**          **NO.: 20-00278-BAJ-SDJ**

## RULING AND ORDER

Before the Court is **Plaintiffs' Emergency Motion for Temporary Restraining Order (Doc. 21)**. The Motion is opposed. *See* (Docs. 38 & 47). A Reply was filed to the oppositions. *See* (Doc. 67). Following a hearing, the parties filed supplemental briefs. *See* (Docs. 81, 82 & 83). For the reasons stated herein, the Motion is **DENIED**.

### I.    FACTS

This action was initially filed on May 4, 2020, *pro se*, by Plaintiff Clifton Belton, Jr., an inmate at East Baton Rouge Parish Prison ("EBRPP"), who suffers from numerous medical conditions that he argued rendered him more susceptible to complications from COVID-19, which has been detected in inmates at the facility. (Doc. 1, at p. 1–2).  On May 27, 2020, an Amended Class Action Complaint was filed on  behalf of ten named plaintiffs (Doc. 4, at ¶¶16–25).[1] In the Amended Complaint, Petitioners allege that the "jail has made no efforts to implement the standard

---

[1] The Court does not find it necessary to rule on the pending Motion for Class Certification (Doc. 8) at this time due to the urgency of the instant Motion and because this litigation is in the early stages.

protective measures the medical experts have advised for all people" and they outline numerous factors suggesting that heightened risks are associated with COVID-19 in jails and prisons. (Doc. 4, at ¶¶ 5, 42). Petitioners posit that Defendants' failure to implement basic mitigating measures will cause the number of infections and deaths to "multiply exponentially at a rapid pace." (*Id*. at ¶ 14). Arguing that Defendants' responses to the pandemic are constitutionally deficient and that EBRPP is "not fit to hold human beings," Petitioners requested relief for three proposed subclasses of detainees: pretrial, post-conviction, and medically vulnerable detainees. (Doc. 4, at ¶¶ 82, 148–168).

To that end, on the same day, Petitioners filed the instant Emergency Motion seeking release for all members of the proposed medically vulnerable subclass. Petitioners argue this subclass faces the highest risk of sickness and death in EBRPP, where social distancing and "basic mitigating measures," such as hygiene, testing, and prompt medical care, either have not or cannot be implemented. (Doc. 21–1, at p. 13). Accordingly, Petitioners argue that until there is a vaccine, release is the only effective measure to protect these medically vulnerable detainees. (*Id*. at p. 18). In support, Petitioners have offered declarations and testimony that asserts that social distancing is impossible within the facility and they cast doubt upon facility cleanliness, staff conduct, and inmate treatment.

The Court notes that both the President of the United States and the Governor of Louisiana have declared a state of emergency in response to this pandemic.[2] Early

---

[2] See, *Proclamation Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak* issued March 13, 2020 by President Donald J. Trump. See also, *Declaration of*

on in the pandemic, the Center for Disease Control ("CDC") recognized the inherent challenges faced by correctional facilities in responding to COVID-19 and provided specific guidance to that end.[3] *See* (Doc. 4–3). Due to the emergency nature of the request, the Court issued an accelerated filing schedule and held a preliminary status conference on June 1, 2020, and a hearing thereafter.

At the hearing, the Court heard oral arguments, as well as witness testimony, from Petitioner Clifton Belton, Jr.; Dr. Fred Rottnek, an expert testifying for Petitioners; Defendant Warden Dennis Grimes; and Phyllis McNeel, a Health Administrator for CorrectHealth which provides healthcare services to EBRPP. Mr. Belton testified that he was released from EBRPP on June 4, 2020. (Doc. 84, at p. 42). He described conditions in the "infirmary dormitory" where he was living as "deplorable" and stated that he could not socially distance from the other people living there with him due to confined space and shared showers and toilets. (*Id*. at p. 28–29). He testified that the EBRPP provided masks and sanitary products and that he received disinfectant products upon request. (*Id*. at p. 67). When he began to feel ill and later tested positive for COVID-19, Mr. Belton was relocated to an isolated area with other detainees who had tested positive. (*Id*. at p. 37). After testing negative twice, he was returned to the "infirmary dormitory," which had been sanitized before his arrival. (*Id*. at p. 58–59).

---

*Public Health Emergency in Response to COVID-19* issued March 11, 2020 by Governor John Bel Edwards.

[3] Petitioners allege that the CDC guidance is not a substitute for what is medically required to protect people's lives during a pandemic. (Doc. 4, at ¶ 47).

Dr. Rottnek, Petitioners' expert witness, visited EBRPP for approximately five hours, during which time he spoke to six inmates and visited all the housing and medical units, as well as the laundry and kitchen. (*Id.* at p. 77). First, Dr. Rottnek clarified that COVID-19 presents more of a risk to individuals with chronic conditions, particularly so in a prison environment. (*Id.* at p. 75 –76). He opined that immediate release was the only option to provide medically vulnerable detainees with a "fighting chance to distance themselves socially" in the community, thereby mitigating the risk of infection. (*Id.* at p. 89–90). This conclusion was reached largely due to challenges to social distancing posed by the layout of the facility. Specifically, the beds, toilets, showers, and sinks are all in fixed positions within a few feet of each other. (*Id.* at p. 79–82). Lastly, he testified that he considers the official CDC guidelines to be a floor, not a ceiling, for protecting EBRPP staff and the inmate population, and he believes that EBRPP is not capable of following those guidelines. (*Id.* at p. 114).

Next, Defendant Warden Grimes testified about conditions within EBRPP. Importantly, he noted that no inmates had died from the virus during the pandemic. (*Id.* at p. 123). Information on methods of protecting oneself against the coronavirus was distributed on the dormitories and was displayed on monitors in the facility, providing detainees with information on how to protect themselves. (*Id.* at p. 127). Signs were posted encouraging social distancing, and the inmates were instructed to sleep head-to-toe. (*Id.* at p. 130). Further, congregation among inmates is discouraged, recreation and movement of inmates is limited, and meals are delivered

4

directly to dormitories rather than served in a communal cafeteria. (*Id*. at p. 130–133).

Additionally, Defendant Grimes described intake procedures. Newly incarcerated inmates receive masks and cleaning supplies and are quarantined for a period of 14 days, during which time they are monitored for COVID-19 symptoms before being released to the general population. (*Id*. at p. 123–124). Supplies are freely distributed to inmates in the general population, but hand sanitizer and bleach are now restricted after it was discovered that some inmates consumed them. (*Id*. at p. 137). To keep procedures updated, Defendant Grimes attended conference calls with the Department of Corrections, and he also attended a class in which an epidemiologist discussed necessary steps to implement the CDC guidelines within correctional facilities. (*Id*. at p. 140–141). The jail population has now been reduced and the older part of the facility has been re-opened, which facilitates social distancing at the EBRPP.

Lastly, Ms. McNeel testified that upon first hearing about the virus, she met with EBRPP staff, including Warden Grimes, to devise a plan to implement the CDC recommendations. They decided upon the area of the jail that would be used to isolate inmates who tested positive for COVID-19. (*Id*. at p. 174). She corroborated Warden Grimes' testimony that symptomatic individuals were placed in single cells, tested twice daily, and were only returned to the general population if they were asymptomatic, had not tested positive, and been quarantined for fourteen days. (*Id*. at p. 177–178). The jail also offers a "special needs unit" which provides constant

5

observation for inmates who medical doctors have deemed medically vulnerable. (*Id*. at p. 179). As of the date of the evidentiary hearing, only five COVID-19-positive inmates remained in the facility out of a total population of 1,100. (*Id*. at p. 189).[4]

In opposition to the instant Motion, Defendants argue that there is no health emergency at the jail—that the measures implemented by EBRPP have prevented deaths and reduced the number of COVID-19 cases since this action was filed. (Doc. 47, at p. 2). Further, they argue that Petitioners have failed to exhaust administrative remedies. (*Id*.). Lastly, Defendants argue that habeas relief under 28 U.S.C. § 2241 is not the appropriate cause of action to bring this claim because Petitioners failed to exhaust state court remedies and inappropriately use the habeas corpus process to attack the conditions of confinement. (Doc. 82, at p. 4–5; Doc. 83 at p. 2).

## II.    LEGAL STANDARD

To obtain injunctive relief by way of a Temporary Restraining Order, Plaintiff must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) that the injunction will not disserve the public interest. *See Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008).

---

[4] Following the hearing, Defendants submitted additional evidence indicating that as of June 15, 2020, only three inmates at the jail tested positive for COVID-19, with no new suspected cases awaiting tests. (Doc. 83, at p. 9).

Also, on June 2, 2019, the daily inmate count in EBRPP was 1,347. One year later, on June 2, 2020, the population had been reduced to 1,062, following coordinated release efforts. (Doc. 47, at p. 16).

## III.    DISCUSSION

Petitioners seek broad relief through an untraditional mechanism—a writ of habeas corpus under 28 U.S.C. § 2241. Initially, Petitioners filed the instant motions seeking relief either through § 2241 or, in the alternative, through 42 U.S.C. § 1983, for violations of the Eighth and Fourteenth Amendments. (Doc. 21–1, at p. 35). However, in their Reply and at the hearing held on June 10, 2020, Petitioners clarified that they solely seek habeas relief through § 2241. (Doc. 67 at p. 14; Doc. 84 at p. 13). Under § 2241(c)(3), a writ of habeas corpus extends to prisoners who are held in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241.

Fundamentally, Petitioners' aver that, short of release, there are no measures Defendants can implement to protect members of the proposed medically vulnerable subclass from unprecedented and severe threats to their safety and health. (Doc. 21–1, at p. 38). Not only do they argue that such measures are impossible to implement, Petitioners further claim that Defendants' efforts to protect the medically vulnerable inmates from COVID-19 "have been virtually non-existent." (Doc. 81, at p. 2). Because there are "no set of conditions under which an individual can be constitutionally detained," Petitioners argue that they are challenging the fact of their continued confinement. (Doc. 4, ¶164).

Generally, exhaustion of available state court remedies is a prerequisite for a federal court to consider a challenge to state detention. *Montano v. Texas*, 867 F.3d 540, 542 (5th Cir. 2017). Petitioners offer several arguments to support excusing this

requirement due to the dire circumstances and closure of state courts.[5] (Doc. 81, at p. 5–8). While the exhaustion requirement applies only to post-trial petitions, district courts are urged to abstain from pre-trial habeas petitions "if the issues raised in the petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner." *Dickerson v. State of La.*, 816 F.2d 220, 225 (5th Cir. 1987) (citations omitted).

Petitioners' argument that no available remedies exist is belied by the facts in the record. For one, the eponymous Petitioner, Mr. Belton, has already been released to home confinement. (Doc. 84, at p. 42). More importantly, Warden Grimes testified that all inmates at the jail have been considered for release. Under the release review protocols, if EBRPP officials believe an inmate should be released, appropriate recommendations are made to the sentencing court and District Attorney. (*Id.*, at p. 221). As stated *supra*, the number of infected inmates at EBRPP has decreased considerably since the filing of this action, rather than "multiply exponentially at a rapid pace," and no inmates have died.

Critically, the Court is not persuaded that Petitioners are truly challenging the fact or duration of confinement, as required for a habeas petition under § 2241, but are instead arguing that conditions at EBRPP are constitutionally deficient in violation of the Eight Amendment. Habeas review is not available to issues unrelated to the cause of detention — "its sole function is to grant relief from unlawful

---

[5] The Court notes that the 19th Judicial District Court in Baton Rouge has now re-opened with various coronavirus safety measures in place. See *19th JDC, Baton Rouge City Court Reopening to Public Monday*, https://www.theadvocate.com/baton_rouge/news/coronavirus/article_364d7e48-9548-11ea-be15-a74f3c768d4d.html

imprisonment or custody, and it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). The docket in this case is replete with evidence concerning the conditions within EBRPP. Numerous allegations are made concerning unsanitary conditions that may be of particular concern for the broadly defined medically vulnerable class. However, no arguments are offered concerning the merits of the underlying charges that resulted in their confinement. Instead, as noted, Petitioners seek a remedy that is more appropriately pursued as an Eighth Amendment conditions of confinement claim rather than as habeas relief.

In support of their interpretation, Petitioners rely in part on a case from the Southern District of Texas, *Vazquez Barrera v. Wolf*, No. 4:20-CV-1241, 2020 WL 1904497 (S.D. Tex. Apr. 17, 2020), in which immigration detainees sought release from federal custody through a writ of habeas corpus. Refusing to rule on whether "conditions-of-confinement cases that do not challenge the 'fact or duration' of detention properly sound in habeas," the court held that the detainees were in fact challenging the fact or duration of confinement because injunctive relief was unavailable and "no conditions of confinement…are sufficient to prevent irreparable constitutional injury given the facts presented in their individual cases." *Vazquez Barrera v. Wolf*, No. 4:20-CV-1241, 2020 WL 1904497, at *4 (S.D. Tex. Apr. 17, 2020). Petitioners further support this argument by citing another case that refused to rule on the propriety of challenges of conditions of confinement through a writ of habeas

corpus, but simply acknowledged that the line between claims under § 2241 and § 1983 could be blurry. *Poree v. Collins*, 866 F.3d 235, 243 (5th Cir. 2017).

The Court does not interpret that blurry line in the way that Petitioners do. Cases cited by Petitioners specifically declined to rule on whether claims attacking conditions of confinement properly sound in habeas, and the subject matter here is such that the Court can only view it as an attack on conditions of confinement. Substantively, the hearing, the pleadings, and vast majority of the evidence provided only address the conditions within EBRPP, which the Court lacks jurisdiction to address under § 2241. *Sanchez v. Brown*, No. 3:20-CV-00832-E, 2020 WL 2615931, at *12 (N.D. Tex. May 22, 2020) (citing *Pierre v. U.S.*, 525 F.2d 933, 935 (5th Cir. 1976)). Petitioners propose a plan for individualized assessment for release, but ultimately request mass release of a class of medically vulnerable individuals who are defined more broadly than the CDC's definition. While Petitioners contend that social distancing is impossible, they do not consider whether a partial release could reduce the prison population to a point where social distancing becomes possible. At its core, this case presents a disagreement over safety measures taken in a state prison. The Court does not see fit to stretch the scope of § 2241 to include such claims.

Finally, the Court is not persuaded that Petitioners are likely to succeed on the merits of their claim even if it were to exercise jurisdiction over the claims. Because their argument is premised entirely upon the allegedly unconstitutional conditions in the facility, specifically with respect to the Eighth and Fourteenth Amendments, the merits of those claims must be briefly examined. Recently, the Court of Appeals

for the Fifth Circuit emphasized that "it is 'difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.'" *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020) (citation omitted).

Moreover, based on the measures taken by EBRPP, it is unlikely that Petitioners could establish a claim of subjective deliberate indifference. Defendants have clearly demonstrated that they have taken measures to implement precautions to protect inmates from the COVID-19 pandemic. They have closely reviewed CDC guidelines for prisons, implemented screening and hygiene procedures, distributed masks and cleaning supplies, and even reduced the prison population and released certain medically vulnerable prisoners, including Mr. Belton. This does not satisfy the requisite state of mind indicative of subjective deliberate indifference, which the Supreme Court has observed to be akin to recklessness. (*Id.*, at p. 802). Here, officials at EBRPP consulted with public health professionals, devised and incorporated safety protocols at the facility, and informed the inmates of measures that they, themselves, could perform to protect themselves from the virus while in the facility.  While the Court does not now reach a judgment on the alleged Constitutional violations asserted by Petitioners, it finds that Petitioners have failed to demonstrate a substantial likelihood of success on the merits of the habeas claims.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that **Plaintiffs' Emergency Motion for Temporary Restraining Order (Doc. 21)** is **DENIED**.

Baton Rouge, Louisiana, this 3rd day of July, 2020

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**