# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CLIFTON BELTON, JR., JERRY BRADLEY, CEDRICK FRANKLIN, CHRISTOPHER ROGERS, JOSEPH WILLIAMS, WILLIE SHEPHERD, DEVONTE STEWART, CEDRIC SPEARS, DEMOND HARRIS, and FORREST HARDY, individually and on behalf of all others similarly situated. | |
| Plaintiffs, | Case No. 3:20-cv-000278-BAJ-SDJ |
| v. | |
| SHERIFF SID GAUTREAUX, in his official capacity as Sheriff of East Baton Rouge, LT. COL. DENNIS GRIMES, in his official capacity as Warden of East Baton Rouge Parish Prison; CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)

**MAY IT PLEASE THE COURT:**

Defendants SID J. GAUTREAUX, III, SHERIFF OF EAST BATON ROUGE PARISH in his official capacity and LT. COL. DENNIS GRIMES, in his official capacity as Warden of East Baton Rouge Parish Prison (hereinafter collectively referred to as "Sheriff Defendants"), file this memorandum in support of their Motion to Dismiss Pursuant to Rule 12(b) and move this Court to dismiss Plaintiffs' claims pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure as set forth herein.

## I.    PRELIMINARY STATEMENT

First, Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(1) because this Court lacks subject matter jurisdiction. Plaintiffs lack standing to bring this suit because they have shown no injury in fact.  Plaintiffs cannot show an injury in fact because the potential harms complained of are not sufficiently likely to occur. Plaintiffs have not demonstrated and cannot demonstrate a substantial likelihood that they will suffer immediate future harm due to the coronavirus at the East Baton Rouge Parish Prison (the "Jail") due to the Sheriff Defendants' actions. There currently is no mass outbreak of COVID-19 at the Jail. Defendants have shown that through the extensive measures they have taken in response to COVID-19 at the Jail, they have successfully at this time quelled the outbreak of COVID-19 at the Jail. Plaintiffs cannot show that they are likely to suffer immediate harm or death due to COVID-19 in the Jail.  Specifically, Plaintiffs, Clifton Belton and Willie Shepherd are no longer incarcerated at the Jail.  Therefore, they clearly cannot show immediate threat of injury in the future due to Sheriff Defendants' actions and do not have standing to bring claims for injunctive or declaratory relief. All Plaintiffs' claims should be dismissed with prejudice for lack of standing.

Plaintiffs' claims for the release of medically vulnerable inmates via writ of habeas corpus and Section 1983 should be dismissed because Plaintiffs have not exhausted available remedies that are a prerequisite to a federal court granting inmates this relief.

It is Sheriff Defendants' position that Plaintiffs' claims based on Section 1983 should be dismissed for failure to exhaust administrative remedies as well. However, failure to exhaust administrative remedies is an affirmative defense requiring the submission of evidence.  Therefore, Sheriff Defendants intend on filing a motion for summary judgment separate from this Motion to Dismiss asserting that Plaintiffs' claims should be dismissed because they failed to exhaust the available administrative remedies prior to filing suit.

Plaintiffs claims should be dismissed pursuant to Rule 12(b)(6) because they have failed to allege sufficient facts to state a claim under either the Eighth or Fourteenth Amendment. Plaintiffs do not allege sufficient facts to state a claim under the objective requirement of an Eighth Amendment claim. Plaintiffs have not alleged facts to show that they were subjected to "an objectively intolerable risk of harm." Further, Plaintiffs have not alleged facts to satisfy the second element of an Eighth Amendment claim: subjective deliberate indifference. Plaintiffs have not alleged any *facts* to show that the Sheriff Defendants subjectively believed their measures undertaken to address COVID-19 in the Jail were inadequate.

Plaintiffs have not alleged sufficient facts to state a claim under the Fourteenth Amendment. Plaintiffs have not alleged facts to show a pervasive pattern of serious deficiencies in providing them basic human needs. Further, Plaintiffs have not alleged facts to show that the Sheriff Defendants acted with deliberate indifference or that the Sheriff Defendants' response to COVID-19 in the Jail is not reasonably related to a legitimate government objective.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### 1. Procedural History

On May 4, 2020, Clifton Belton, Jr. (hereinafter referred to as "Belton") filed a pro se *Complaint*[1] regarding the conditions of the East Baton Rouge Parish Prison during the ongoing COVID-19 pandemic. On May 22, 2020, attorney David Utter filed an *Ex Parte Motion to Enroll*[2] as counsel of record on behalf of Belton. On May 27, 2020, Plaintiffs filed an *Amended Class Action Complaint*[3] along with attached exhibits regarding the condition of the EBRPP.

On May 27, 2020, Plaintiffs also filed an *Emergency Motion for Temporary Restraining*

---

[1] Rec. Doc. 1
[2] Rec. Doc. 3
[3] Rec. Doc. 4

*Order*[4] against Sheriff Defendants and the City of Baton Rouge/Parish of East Baton Rouge asking the court to release the medically vulnerable subclass members.  Plaintiffs contemporaneously filed a *Motion for Expedited Discovery*[5] requesting an expedited expert's inspection of the EBRPP in anticipation of a hearing on their request for preliminary injunction. The inspection of the Jail took place prior to the hearing on Plaintiffs' *Emergency Motion for Temporary Restraining Order.* Plaintiffs also filed a *Motion for Class Certification.*[6] Briefing has not been set for Plaintiffs' *Motion for Class Certification.*

On June 10, 2020 this Court held a hearing on Plaintiff's *Emergency Motion for Temporary Restraining Order.* On July 3, 2020 this Court issued a Ruling and Order on Plaintiffs' *Emergency Motion for Temporary Restraining Order.*[7] This Court denied Plaintiffs' *Emergency Motion for Temporary Restraining Order* requesting the release of medically vulnerable inmates brought pursuant to 28 U.S.C. Section 2241 (Writ of Habeas Corpus). In its ruling this Court noted that "[g]enerally exhaustion of available state court remedies is a prerequisite for a federal court to consider a challenge to state detention."[8] This Court held that "Petitioners'  argument that no available remedies exist is belied by the facts in the record."[9]  Further, this Court found Plaintiffs' claims are an attack on the conditions of confinement rather than the fact or duration of confinement.  Therefore, this Court found that it lacks jurisdiction to address Plaintiffs' claims pursuant to Section 2241.[10] Finally, this Court found Plaintiffs failed to demonstrate a substantial likelihood of success on the merits regarding the Constitutional violations asserted by Plaintiffs.

---

[4] Rec. Doc. 5-2
[5] Rec. Doc. 7
[6] Rec. Doc. 8
[7] Rec. Doc. 90
[8] Rec. Doc. 4 page 7 citing *Montano v. Texas,* 867 F. 3d 540, 542 (5th Cir. 2017)
[9] Rec. Doc. 4 page 8
[10] Rec. Doc. 4 pages 8-10

Specifically, this Court found that, "based on the measures taken by EBRPP, it is unlikely that Petitioners could establish a claim of subjective deliberate indifference."[11]

Thereafter, pursuant to their *Motion for Expedited Discovery,* Plaintiffs' proposed discovery consisting of nineteen (19) Requests for Production of Documents, fourteen (14) Interrogatories, and a Rule 30(b)(6) deposition covering fourteen (14) topics. Sheriff Defendants responded to these discovery requests except for one Request for Production of Documents and the Rule 30(b)(6) deposition on the basis that it was not reasonable or narrowly tailored.

## 2. Factual Background

The named Plaintiffs are: Clifton Belton, representing the Class, the Pretrial Subclass, and the Medically Vulnerable Subclass; Jerry Bradley, representing the Class and Post-Conviction Subclass; Cedric Franklin, representing the Class, Post-Conviction Subclass, and Medically Vulnerable Subclass; Joseph Williams, representing the Class and the Pretrial Subclass; Willie Shepherd, representing the Class, the Pretrial Subclass, and the Medically Vulnerable Subclass; Devonte Stewart, representing the Class and the Pretrial Subclass; Cedric Spears, representing the Class and the Pretrial Subclass; Demond Harris, representing the Class and the Pretrial Subclass; and Forest Hardy, representing the Class and the Pretrial Subclass.[12] Plaintiffs, Clifton Belton and Willie Shepherd are no longer incarcerated at the Jail.[13]

Plaintiffs seek injunctive relief from this Court based on claims that a mass outbreak of COVID-19 in the Jail is inevitable and the people detained in the Jail are at a significant risk of becoming infected and ultimately dying.[14] Further, Plaintiffs seek the release of medically

---

[11] Rec. Doc. 90 page 11
[12] Rec. Doc. 4 ¶¶ 16-25
[13] See Exhibit 1 Declaration of Major Fontenot
[14] Rec. Doc. 4 ¶¶3, 9

vulnerable inmates claiming that release from detention is the only viable method to protect them from potentially lethal harm.[15]

The evidence shows that no EBRPP inmates have died due to COVID-19.[16] Further, due to the extensive steps taken by the Jail to address COVID-19, the number of cases have steadily and significantly declined since the peak in cases in mid-April.[17]    As of Monday, June 15, 2020, there were three inmates in the Jail, testing positive for COVID-19 and there were no suspected cases awaiting tests results.[18]  As of July 27, 2020, there was only one inmate in the custody of the Sheriff testing positive for COVID-19. The one inmate confirmed positive, was a female who was on the intake line, who was sent to Our Lady of the Lake Hospital and tested positive there. There have been no new cases diagnosed among the male inmates since May 12, 2020.[19]

Plaintiffs' claims are based on alleged violations of the Fourteenth Amendment as to the Pretrial Subclass and violation of the Eighth Amendment as to the Post-Conviction Subclass.[20] Plaintiffs claim that the Defendants established de facto policies and conditions of confinement that deny Plaintiffs adequate health care and protections from COVID-19.[21]  Plaintiffs contend that Defendants are "failing to adequately safeguard their health and safety in the midst of a potential outbreak of a contagious, infectious disease."[22] Plaintiffs contend that Defendants are failing to abate the serious risk that COVID-19 poses to Plaintiffs.[23] This Court recognized in its

---

[15] Rec. Doc. 4 ¶ 13
[16] Rec. Doc. 47-31 Dec. of Phyllis McNeel
[17] Rec. Doc. 47-31 Dec. of Phyllis McNeel
[18] Rec. Doc. 80-3 Supplemental Affidavit of Major Catherine Fontenot
[19] See Exhibit 1 Declaration of Major Fontenot
[20] Rec. Doc. 4 ¶¶ 148-160
[21] Rec. Doc. 4 ¶¶ 152, 158
[22] Rec. Doc. 4 ¶ 151
[23] Rec. Doc. 4 ¶ 157

Ruling on Plaintiffs' *Emergency Motion for Temporary Restraining Order*, the extensive measures

the Defendants took to implement precautions to protect inmates from the COVID-19 pandemic.[24]

## III.    ARGUMENT

### A.  Plaintiffs' claims should be Dismissed for Lack of Subject-Matter Jurisdiction Pursuant to Rule 12(b)(1).

#### 1.  Rule 12(b)(1) Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a

federal court's subject matter jurisdiction.[25]  A case is properly dismissed for lack of subject matter

jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.[26]  The

Court may determine whether it possesses subject matter jurisdiction over an action by looking to

"(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the

record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of

disputed facts."[27]

The burden of proof for a Rule 12(b)(1) motion to dismiss falls on the party asserting

jurisdiction.[28]  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does,

in fact, exist.[29]  And "the court may consider disputed facts as well as undisputed facts in the record

and make findings of fact related to the jurisdictional issue."[30] When a motion and evidence brings

the court's jurisdiction into question, "no presumptive truthfulness attaches to plaintiff's

allegations."[31]  In considering a motion to dismiss for lack of subject matter jurisdiction, the Court

---

[24] Red. Doc. 90 pages 4-6 and 11.

[25] Fed. R. Civ. P. 12(b)(1)

[26] *Home Builders Ass'n of Miss. Inc. v. City of Madison,* 143 F. 3d 1006, 1010 (5th Cir. 1998); Fed. R. Civ. P. 12(b)(1)

[27] *Barrett Computer Services, Inc. v. PDA, Inc.,* 884 F. 2d 214, 220 (5th Cir. 1989)

[28] *Ramming v. United States,* 281 F. 3d 158, 161 (5th Cir. 2001)

[29] *Ramming,* 281 F. 3d at 161 (citing *Menchaca v. Chrysler Credit Corp.,* 613 F. 2d 507, 511 (5th Cir. 1980)

[30] *Ramirez v. Lone Star Pediatrics, P.A.,* 2014 WL 1281510 at *2 (N.D. Tex. Mar. 31, 2014 (citing *Clark v. Tarrant Cty.,* 798 F. 2d 736, 741 (5th Cir. 1986).

[31] *Montez v. Dep't of Navy,* 392 F. 3d 147, 149 (5th Cir. 2004)

may consider evidence outside of the pleadings without converting the motion to one for summary judgment.[32]

"Federal courts must resolve questions of jurisdiction before proceeding to the merits."[33] "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking. This is the first principle of federal jurisdiction."[34]

### 2. Plaintiffs Lack Standing because they have shown no Imminent Injury Caused by Defendants.

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies."[35] "'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases and controversies.'"[36]

Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure the federal courts did not exceed their authority as it has been traditionally understood.[37] The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.[38]The doctrine of standing provides definition to these constitutional limits by "identify[ing] those disputes which are

---

[32] *Chelette v. Wilkie,* 2020 WL 3819079 (W.D. La. 2020) citing *Martin v. Napolitano,* 2012 WL 1413579, at *3 (W.D. La. Apr. 2, 2012), *report and recommendation adopted,* 2012 WL 1413162 (W.D. La. Apr. 23, 2012) (citing *Holt v. United States,* 46 F. 3d 1000, 1003 (10th Cir. 1995))

[33] *Ashford v. United States,* 463 F. App.x 387, 391-92 (5th Cir. 2012) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.s. 83, 101, 118 S.Ct. 1003, 140 L. Ed. 2d 210 (1998); *USPPS, Lt. v. Avery Dennison Corp.,* 647 F. 3d 274, 283 & n. 6 (5th Cir. 2011), and *Jasper v. FEMA,* 414 F. App'x 649, 651 (5th Cir. 2011)

[34] *Stockman v. FEC,* 138 F. 3d 144, 151 (5th Cir. 1998) (quotation and citation omitted)

[35] U.S. CONST., art. III Section 2

[36] *Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L. Ed. 2d 849 (1997) (citations omitted)

[37] See *Id* at 820

[38] *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635d (2016), as revised (May 24, 2016)(citations omitted)

appropriately resolved through the judicial process."[39] If a litigant lacks standing to assert a claim, then the court lacks subject matter jurisdiction to entertain a request for such relief.[40]

Article III requires the plaintiff to demonstrate three things: (1) the plaintiff suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.[41]  Regarding "injury-in-fact, a speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.[42] The injury must be "actual or imminent"; i.e., *certainly* impending."[43]  "Allegations of *possible* future injury are not sufficient."[44] The plaintiff must affirmatively prove his standing to sue for injunctive relief. The Supreme Court has stated that "[t]he party invoking federal jurisdiction bears the burden of establishing these elements," and the elements "are not merely pleading requirements but rather an indispensable part of the plaintiff's case."[45]

The Fifth Circuit recently explained the standard with respect to plaintiffs seeking prospective relief:

> '[T]he Supreme Court made clear [in *City of Los Angeles v. Lyons,* 461 U.S.95, 101-03, 103 S.Ct. 1660, 75 L. Ed. 2d 675 (1983),] that plaintiffs may lack standing to seek prospective relief even though they have standing to sue for damages." *Soc'y of Separationists, Inc. v. Herman,* 959 F. 2d 1283, 1285 (5ᵗʰ Cir. 1992) (en banc).  In *Lyons,* the Supreme Court explained: '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief… if unaccompanied by any continuing, present, adverse effects.' *Lyons,* 461 U.S. at 102, 103 S. Ct. 1660 (alteration and omission in original) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495-96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974). (Although *Lyons* dealt with injunctive relief, this reasoning applies equally to

---

[39] *Crane v. Johnson* 783 F. 3d 244, 251 (5ᵗʰ Cir. 2015) quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)

[40] *Whitmore v. Arkansas,* 495 U.S. 149, 154-55 (1990)

[41] *Lujan v. Defenders of Wildlife,* 504 U.S. 555,560-61, 112 S. Ct. 2130, 2136,119 L. Ed. 2d 351 (1992)(citation omitted)

[42] *Holland Am. Ins. Co v. Succession of Roy,* 777 F. 2d 992, 997 (5ᵗʰ Cir. 1985)

[43] *Clapper v. Amnesty International. USA,* 568 U.S.398, 408 (2013)

[44] *Id.* (Internal quotations omitted)

[45] *Lujan,* 504 U.S. at 561 (citations omitted)

declaratory relief. *See Herman,* 959 F. 2d at 1285 (citations omitted).)

Along that line, our court has held: 'To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Id.* To have standing when 'seeking injunctive or declaratory relief', plaintiff must allege: facts 'from which it appears there is a substantial likelihood that he will suffer injury in the future', demonstrating a 'substantial and continuing controversy between two adverse parties'; 'facts from which the continuation of the dispute may be reasonably inferred'; and controversy is 'real and immediate,… creat[ing] a definite, rather than speculative threat of future injury.' *Bauer,* 341 F. 3d at 358 (citations omitted)[46]

Finally, the standing inquiry in a class action suit must be addressed to the named plaintiffs, a requirement that cannot be circumvented by alleging that a class, as a whole, faces a threat of imminent injury.[47]

In this case, Plaintiffs cannot show an injury in fact because the potential harms complained of are not sufficiently likely to occur. Plaintiffs have not demonstrated and cannot demonstrate a substantial likelihood that they will suffer immediate future harm due to the coronavirus at the East Baton Rouge Parish Prison (the "Jail") due to the Sheriff Defendants' actions.

Plaintiffs seek a permanent injunction requiring Defendants to take certain action at the Jail during the COVID-19 pandemic and to immediately release all Medically Vulnerable Plaintiffs or transfer them to home confinement.[48] Plaintiffs seek injunctive relief from this Court based on claims that a mass outbreak of COVID-19 in the Jail is inevitable and the people detained in the Jail are at a significant risk of becoming infected and ultimately dying.[49] Further, Plaintiffs seek

---

[46] *Serafine v. Crump,* 800 Fed. Appx. 234, 236, 237 (5th Cir. 2020)
[47] See *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974) ("Moreover, if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.")  (citations omitted)
[48] Rec. Doc. 4 page 62 Prayer for Relief
[49] Rec. Doc. 4 ¶¶3, 9

the release of medically vulnerable inmates claiming that release from detention is the only viable method to protect them from potentially lethal harm.[50]

Defendants have shown during the hearing on Plaintiffs' *Emergency Motion for Temporary Restraining Order* that not only are they capable of providing medically vulnerable inmates and others at the Jail with the care necessary to protect them from death or serious illness from COVID-19, but that they have, in fact, done so. This Court recognized in its Ruling on Plaintiffs' *Emergency Motion for Temporary Restraining Order,* the extensive measures the Defendants took to implement precautions to protect inmates from the COVID-19 pandemic.[51] The evidence shows that no EBRPP inmates have died due to COVID-19.[52] Further, due to the extensive steps taken by the Jail to address COVID-19, the number of cases have steadily and significantly declined since the peak in cases in mid-April.[53]    As of June 15, 2020, there were three inmates in the Jail testing positive for COVID-19 and there were no suspected cases awaiting tests results.[54] As of July 27, 2020, there was only one inmate in the custody of the Sheriff testing positive for COVID-19. The one inmate confirmed positive, was a female who was on the intake line, who was sent to Our Lady of the Lake Hospital and tested positive there. There have been no new cases diagnosed among the male inmates since May 12, 2020.[55]

There currently is no mass outbreak of COVID-19 at the Jail. Defendants have shown that they have successfully at this time quelled the outbreak of COVID-19 at the Jail. Plaintiffs cannot show that they are likely to suffer immediate harm or death due to COVID-19 in the Jail.

---

[50] Rec. Doc. 4 ¶ 13
[51] Red. Doc. 90 pages 4-6 and 11.
[52] Rec. Doc. 47-31 Dec. of Phyllis McNeel
[53] Rec. Doc. 47-31 Dec. of Phyllis McNeel
[54] Rec. Doc. 80-3 Supplemental Affidavit of Major Catherine Fontenot
[55] See Exhibit 1 Declaration of Major Fontenot

Plaintiffs, Clifton Belton and Willie Shepherd are no longer incarcerated at the Jail.[56] Therefore, they cannot show immediate threat of injury in the future due to Sheriff Defendants' actions and do not have standing to bring claims for injunctive or declaratory relief. Therefore, their claims should be dismissed. For the reasons mentioned above, the remaining named Plaintiffs have not demonstrated and cannot demonstrate a substantial likelihood that they will suffer immediate future harm due to the coronavirus at the Jail due to the conduct of the Sheriff Defendants.  Plaintiffs' unfounded fear of contracting COVID-19 either for the first time or by being re-infected at the Jail is not sufficient to show an injury in fact.

The facts in this case as to the risk of harm to Plaintiffs are in stark contrast to the facts in *Marlowe v. LeBlanc,* 2020 WL 1955303 (M.D. La. 4/23/2020).  In *Marlowe,* this Court found that the plaintiffs had demonstrated standing because of the clear danger posed by COVID-19 in the Rayburn Correctional Center. This Court based its finding in *Marlowe,* on the fact that at the time the Motion for Temporary Restraining Order was filed, only two inmates had tested positive for COVID-19, and less than two weeks later, at the time of the hearing, that number had escalated to 25 infections among inmates and staff.[57] Thus, at the time of the Court's ruling in *Marlowe,* unlike in this case, the number of infections at the correctional facility had increased dramatically. In *Marlowe*, this Court found that Plaintiff had demonstrated the clear danger posed by COVID-19 in the Rayburn facility, and thus found that Plaintiff had adequately demonstrated standing.  In this case, Plaintiffs have not demonstrated that there is a clear danger to them because of COVID-19 at the East Baton Rouge Parish Prison. In fact, in this case, rather than increasing dramatically, the number of COVID-19 cases at the Jail have decreased dramatically since Plaintiffs filed their suit.

---

[56] Id.
[57] *Marlowe,* *2

Even assuming Plaintiffs could show a substantial likelihood that they will suffer immediate future harm due to the coronavirus at the East Baton Rouge Parish Prison, Plaintiff cannot show that Defendants' responses to COVID-19 injured them. As stated above, this Court recognized in its Ruling on Plaintiffs' *Emergency Motion for Temporary Restraining Order* the extensive measures the Defendants took to implement precautions to protect inmates from the COVID-19 pandemic.[58] Plaintiffs must plead and prove that *each* alleged inadequacy is substantially likely to injury them.[59] Further, Plaintiffs obviously cannot meet this standard for numerous measures that they seek to have this Court order that they are already taking as shown in the hearing on Plaintiffs' *Emergency Motion for Temporary Restraining Order* and the documents attached to Defendants' opposition.  Plaintiffs cannot show that Defendants' responses to COVID-19 is substantially likely to injure them.

Therefore, Plaintiffs lack standing to bring their claims and their claims should be dismissed for lack of subject matter jurisdiction.

### 3. Plaintiffs' claims for Release of Medically Vulnerable Inmates should be Dismissed.

In their Amended Class Action Complaint, Plaintiffs seek release of Medically Vulnerable inmates via 28 U.S.C. Section 2241 (Writ of Habeas Corpus)[60] and 42 U.S.C. Section 1983.[61] Both of these claims should be dismissed.

First, this Court should dismiss Plaintiffs claims based on Section 2241. This Court denied Plaintiffs' Motion for Temporary Restraining Order requesting the release of medically vulnerable inmates brought pursuant to 28 U.S.C. Section 2241 (Writ of Habeas Corpus). In its ruling this

---

[58] Red. Doc. 90 pages 4-6 and 11.
[59] *See In re Gee,* 941 F. 3d 153, 163-65 (5th Cir. 2009).
[60] Rec. Doc. 4  Count III ¶¶ 161-164
[61] Rec. Doc. 4 Count IV ¶¶ 165-168

Court noted that "[g]enerally exhaustion of available state court remedies is a prerequisite for a federal court to consider a challenge to state detention."[62] This Court held that "Petitioners' argument that no available remedies exist is belied by the facts in the record."[63] Further, this Court found Plaintiffs' claims are an attack on the conditions of confinement rather than the fact or duration of confinement.  Therefore, this Court found that it lacks jurisdiction to address Plaintiffs' claims pursuant to Section 2241.[64] In light of this Court's ruling on Plaintiffs' Motion for Temporary Restraining Order, Plaintiffs' claims for release of Medically Vulnerable pursuant to Section 2241/writ of habeas corpus should be dismissed with prejudice.

Plaintiffs' claims to release medically vulnerable inmates pursuant to Section 1983 should be dismissed because Plaintiffs have not met the requirements for the "release" of prisoners been met under the Prison Litigation Reform Act ("PLRA").

The PLRA establishes the procedure in 18 U.S.C. Section 3626 that must be followed in order for the federal court to release a state inmate.

**(a) Requirements for relief. –**

**(3) Prisoner release order.--(A)** In any civil action with respect to prison conditions, no court shall enter a prisoner release order unless—

**(i)** a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order; and

**(ii)** the defendant has had a reasonable amount of time to comply with the previous court orders.

**(B)** In any civil action in Federal court with respect to prison conditions, a prisoner release order shall be entered only by a three-judge court in accordance with section 2284 of title 28, if the requirements of subparagraph (E) have been met.

---

[62] Rec. Doc. 4 page 7 citing *Montano v. Texas,* 867 F. 3d 540, 542 (5th Cir. 2017)
[63] Rec. Doc. 4 page 8
[64] Rec. Doc. 4 pages 8-10

**(C)** A party seeking a prisoner release order in Federal court shall file with any request for such relief, a request for a three-judge court and materials sufficient to demonstrate that the requirements of subparagraph (A) have been met.

**(D)** If the requirements under subparagraph (A) have been met, a Federal judge before whom a civil action with respect to prison conditions is pending who believes that a prison release order should be considered may sua sponte request the convening of a three-judge court to determine whether a prisoner release order should be entered.

**(E)** The three-judge court shall enter a prisoner release order only if the court finds by clear and convincing evidence that—

**(i)** crowding is the primary cause of the violation of a Federal right; and

**(ii)** no other relief will remedy the violation of the Federal right.

**(F)** Any State or local official including a legislator or unit of government whose jurisdiction or function includes the appropriation of funds for the construction, operation, or maintenance of prison facilities, or the prosecution or custody of persons who may be released from, or not admitted to, a prison as a result of a prisoner release order shall have standing to oppose the imposition or continuation in effect of such relief and to seek termination of such relief, and shall have the right to intervene in any proceeding relating to such relief.[65]

The United States Supreme Court declared, "[t]ogether, these requirements ensure that the 'last resort remedy' of a population limit is not imposed 'as a first step.'"[66]

In *Livas v. Myers,* 2020 WL 1939583 (W.D. La. 4/22/2020), the Court granted defendants Rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction. Similar to this case, plaintiffs in *Livas* sought to bring a class action requesting the release of medically vulnerable inmates due to COVID-19. The court dismissed plaintiffs' Section 2241 habeas corpus claims and stated: "to the extent that Petitioners would move to amend their Complaint to assert a claim for injunctive or other prospective relief under the PLRA, such amendment would be futile where

---

[65] 18 U.S.C. Section 3626
[66] *Brown v. Plata,* 563 U.S. 493, 514, 131 S. Ct. 1910, 1930, 179 L. Ed. 2d 969 (2011) (citation omitted)

there are no factual allegations that Petitioners have exhausted their administrative remedies, nor have other requirements for the "release" of prisoners been met. *See* 18 U.S.C. Section 3626(a)(2)-(3)."[67]

In this case, there are no factual allegations and Plaintiffs cannot show that the statutory mandates of the PLRA have been met. Therefore, Plaintiffs' claims to release medically vulnerable inmates pursuant to Section 1983 should be dismissed with prejudice.

### B. Plaintiffs' claims should be Dismissed for Failure to State a Claim Pursuant to Rule 12(b)(6)

### 1. Rule 12(b)(6) Standard

A defendant is entitled to dismissal under Rule 12(b)(6) when plaintiff fails to state a claim upon which relief may be granted. "Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level."[68]  "A legally sufficient complaint does not need to contain detailed factual allegations, but **it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action."**[69]  In order to avoid dismissal, for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.[70]  A complaint is also insufficient if it merely "tenders 'naked assertions[s]' devoid of 'further factual enhancement.'"[71] In order to satisfy the  plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[72] "Furthermore, while the court must

---

[67] *Livas* at *9
[68] *National Bi-Weekly Admin. Inc. v. Belo Corp.,* 512 F. 3d 137, 140 (5th Cir. 2007)
[69] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)
[70] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards,* 667 F. 2d 1045 (5th Cir. 1982)
[71] *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted)
[72] *Iqbal,* 556 U.S. at 678

accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[73] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[74]

**2. Injunction Standard**

Plaintiffs seek declaratory and injunctive relief based on alleged violations of the Fourteenth and Eighth Amendments.[75] Plaintiffs seek a temporary restraining order, preliminary injunction and permanent injunction requiring Defendants to immediately release all Medically Vulnerable Plaintiffs and Subclass Members or transfer them to home confinement. Plaintiffs also seek an order (injunction) requiring Defendants to take certain steps during the COVID-19 pandemic.[76]

"The party seeking a permanent injunction must…establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest."[77] "Failure to establish any of these elements results in the denial of the motion for injunctive relief."[78]The legal standard for issuing a permanent injunction is "essentially the same" as the standard for issuing a preliminary injunction.[79] Instead of proving a substantial likelihood of success on the merits though, the plaintiff must actually prevail on the merits.[80]

---

[73] *Taha V. William Marsh Rice Univ.*, 2012 WL 1576099 at*2 (S.D. Tex. 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions,* 365 F. 3d 353, 361 (5th Cir. 2004))
[74] *Twombly,* 550 U.S. 556 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986))
[75] Rec. Doc. 4 Count II and Count IV
[76] Rec. Doc. 4 pages 62-64
[77] *VRC LLC v. City of Dallas,* 460 F. 3d 607, 611 (5th Cir. 2006) (citing *Dresser-Rand, Co. v. Virtual Automation, Inc.,* 361 F. 3d 831, 847-48 (5th Cir. 2004).
[78] *Guy Carpenter & Co. v. Provenzale,* 334 F. 3d 459, 464 (5th Cir. 2003)
[79] *Dresser-Rand Co. v. Virtual Automation Inc.,* 361 F. 3d 831, 847 (5th Cir. 2004)
[80] *Id.*

It is the Sheriff Defendants' position that Plaintiffs will not be able to establish any of the four requirements for a permanent injunction. Plaintiffs' claims should be dismissed on the pleadings because Plaintiffs have not alleged facts to show success on the merits. Plaintiffs have failed to allege facts to state a claim for relief under the Eighth or Fourteenth Amendment. Therefore, Plaintiffs' claims for injunctive relief and declaratory judgment should be dismissed.

### 3. Plaintiffs fail to state an Eighth Amendment or Fourteenth Amendment Claim against the Defendants.

Plaintiffs assert Section 1983 claims for declaratory and injunctive relief for violation of the Fourteenth Amendment as to the Pretrial Subclass and violation of the Eighth Amendment as to the Post-Conviction Subclass.[81] In support of these claims, Plaintiffs claim that the Defendants established de facto policies and conditions of confinement that deny Plaintiffs adequate health care and protections from COVID-19.[82] Plaintiffs contend that Defendants are "failing to adequately safeguard their health and safety in the midst of a potential outbreak of a contagious, infectious disease."[83] Plaintiffs contend that Defendants are failing to abate the serious risk that COVID-19 poses to Plaintiffs.[84]

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."[85] Prison officials who act reasonably cannot be found liable under the Eighth Amendment.[86]An Eighth Amendment conditions of confinement claim has two components, one objective and one subjective.[87] To satisfy the objective requirement, the plaintiff must show "an objectively

---

[81] Rec. Doc.. 4 ¶¶ 148-160
[82] Rec. Doc. 4 ¶¶ 152, 158
[83] Rec. Doc. 4 ¶ 151
[84] Rec. Doc. 4 ¶ 157
[85] U.S. Const. Amend. VIII
[86] *Farmer v. Brennan,* 511 U.S. 825, 845 (1994)
[87] *Id.* at 845

intolerable risk of harm."[88] To satisfy the subjective requirement, the plaintiff must show that the defendant  (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively drew the inference that risk existed; and (3) disregarded the risk.[89] The incidence  of diseases or infections, standing alone, do not imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks.[90]Instead, the plaintiff must show a denial of "basic human needs" and deliberate indifference.[91] "Deliberate indifference is an extremely high standard to meet."[92]

To successfully set forth a condition of confinement claim, under the Fourteenth Amendment, the plaintiff must show "(1) a rule or restriction, or identifiable intended condition or practice, or a jail official's acts or omissions that were sufficiently extended or pervasive which was (2) not reasonably related to a legitimate government objective, and which (3) caused the violation of detainee's constitutional rights.[93] A detainee challenging jail conditions must demonstrate more than an incident; he must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights.[94]  "[I]solated examples of illness, injury or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate."

The effective management of a detention facility is a valid objective that may justify imposition of conditions and restrictions on pretrial detention.[95]  The Supreme Court in *Bell*

---

[88] *Valentine v. Collier,* 956 F. 3d 797, 801 (5th Cir. 2020), *denying motion to vacate stay*2020 WL 2497541 (May 14, 2020).
[89] *Id.*
[90] *Id.* (citing *Shepherd v. Dallas Cty.,* 591 F. 3d 445, 454 (5th Cir. 2009) (A Fourteenth Amendment conditions of confinement case)
[91] *Id.*
[92] *Id.* (quoting *Cadena v. El Paso Cty.,* 946 F. 3d 717, 728 (5th Cir. 2020).
[93] *Duvall v. Dall. Cnty., Tex.,* 631 F. 3d 203, 207 (5th Cir. 2011)
[94] *Shepherd v. Dallas County,* 591 F. 3d 445, 452-55 (5th Cir. 2009)
[95] *Estate of Henson v. Wichita County, Tex.,* 795 F. 3d 456 (5th Cir. 2015)

explained that in determining "whether restrictions or conditions are reasonably related to the Government's interest in…operating the institution in a manageable fashion," courts must remember that "'[s]uch considerations are peculiarly within the province and professional expertise of corrections officials.'"[96] Courts must not become "enmeshed in the minutiae of prison operations," which will only distract from the question presented: "does the practice or condition violate the Constitution?"[97]

The deliberate indifference standard applies to both Plaintiffs' Eighth Amendment and Fourteenth Amendment claims. Under the Eighth Amendment, Plaintiffs must prove an objectively intolerable risk of harm and subjective deliberate indifference.[98] Under the Fourteenth Amendment, Plaintiffs must demonstrate a pervasive pattern of serious deficiencies in providing for their basic human needs and that the jail official's acts or omissions were not reasonably related to a legitimate government objective.[99] As the Fifth Circuit has recognized, "the reasonable-relationship test employed in conditions cases is functionally equivalent to the deliberate indifference standard employed in episodic cases."[100]

Further, this case is equivalent to a failure to protect or failure to provide basic needs case. The Fifth Circuit in *Polk v. Det. Ctr. Of Natchitoches Parish,* 32 F. App'x 128 (5th Cir. 2002) (per curiam), stated:

> 'The State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm during their confinement.' *Hare v. City of Corinth,* 74 F. 3d 633, 650 (5th Cir. 1996)(en banc). A prison official is not liable under Section 1983 unless the prisoner shows that the

---

[96] *Bell*  at 540
[97] *Id* at 544
[98] *Valentine v. Collier,* 956 F. 3d 797, 801 (5th Cir. 2020), *denying motion to vacate stay* 2020 WL 2497541 (May 14, 2020)
[99] *Duvall v. Dall. Cnty., Tex.,* 631 F. 3d 203, 207 (5th Cir. 2011)
[100] *Duvall v. Dallas Cty., Tex.,* 631 F. 3d 203, 207 (citing *Scott v. Moore,* 114 F. 3d 51, 54 (5th Cir. 1997) (en banc)

official exhibited deliberate indifference to his conditions of confinement or serious medical needs. *Farmer v. Brennan,* 511 U.S. 825, 837-43, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The prisoner must show that the official:  (1) was aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn; (2) drew an inference that such potential for harm existed; and (3) disregarded that risk by failing to take reasonable measures to abate it.  *Id.* at 837, 847, 114 S. Ct. 1970. A pretrial detainee's claim based upon a jail official's "episodic act or omission" is also evaluated under the standard of subjective deliberate indifference enunciated in *Farmer. Hare* 74 F. 3d at 648[101]

Courts around the country have applied the deliberate indifference standard to evaluate facilities' responses to COVID-19. *See Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (applying deliberate indifference standard for Eighth and Fourteenth Amendment claims and staying district court's issuance of a preliminary injunction against jail facility); *Archilla v. Witte*, No. 420-CV-00596-RDP-JHE, 2020 WL 2513648, at *13 n.20 (N.D. Ala. May 15, 2020) (noting, in action by ICE detainees, that "the standard for providing adequate medical care to pretrial detainees under the Due Process Clause is the same standard required for convicted persons under the Eighth Amendment"); *Sacal-Micha v. Longoria*, No. 1:20-CV-37, 2020 WL 1518861, at *4 (S.D. Tex. Mar. 27, 2020) ("A detainee can establish a constitutional violation based on inadequate conditions of his confinement. But to do so, he must demonstrate that the officials acted with deliberate indifference to his medical needs or his safety." (citing, *inter alia, Baughman v. Garcia*, 254 F. Supp. 3d 848, 868–69 (S.D. Tex. 2017)), *aff'd sub nom. Baughman v. Seale*, 761 F. App'x 371 (5th Cir. 2019) (applying the deliberate indifference standard to Fourteenth and Eighth Amendment claim for denial of medical care)); *Mohammed S. v. Tritten*, No. 20-CV-793 (NEB/ECW), 2020 WL 2750836, at *22 (D. Minn. Apr. 28, 2020) (stating, in denying motion for TRO brought by ICE detainee in response to COVID-19, that "the deliberate indifference test, not

---

[101] *Polk* at p. 128

the freedom from punishment test, applies to a claim challenging the adequacy of precautionary measures to reduce the risk of infection: 'The governmental duty to protect at issue in this case is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and general well-being.' (citing *Butler v. Fletcher,* 465 F. 3d 340, 344 (8th Cir. 2006))), report and recommendation adopted, No. 20-cv-783, 2020 WL 275019 (D. Minn. May 27, 2020).

Judge deGravelles recently noted that "*Swain, Archilla, Mohammad, Sacal-Micha,* and *Polk* are strong authority that the Court should apply the deliberate indifference standard for claims brought in response to the threat of COVID-19, even for those brought under the Fourteenth Amendment.[102] Ultimately, Judge deGravelles found that "the Court need not resolve the question because regardless of which standard to apply-the Eighth Amendment's deliberate indifference standard or the Fourteenth Amendment's 'reasonably related to a legitimate interest' standard-the Court finds that the Plaintiffs have failed to meet the burden of clearly demonstrating a substantial likelihood of success on the merits."[103] The court found that the defendant, Louisiana Office of Juvenile Justice' response to COVID-19 in in that case was rationally related to the legitimate interests of rehabilitation and public health and safety.

The Fifth Circuit has given guidance on how to evaluate a claim that officers of correctional facilities violated Plaintiffs' constitutional rights in their response to COVID-19. In *Valentine,* the Fifth Circuit examined whether the TDCJ was likely to prevail on the merits of the plaintiffs' Eighth Amendment claim and determined that after accounting for the protective measures taken by TDCJ, plaintiffs had not shown a "substantial risk of serious harm" that amounts to cruel and unusual punishment.[104] Further, the Fifth Circuit in *Valentine* pointed out that the

---

[102] *J.H. by and through N.H. v. Edwards,* No. 20-cv-293, 2020 WL 3448087 *33(M.D. La. June 24, 2020)
[103] *Id*
[104] *Id.* at 801-02

district court cited no evidence that TCDJ subjectively believed its measures were inadequate.[105]

This Court found in its ruling on Plaintiff's *Emergency Motion for Temporary Restraining Order*, that Plaintiffs failed to demonstrate a substantial likelihood of success on the merits as to the alleged constitutional violations under the Eighth and Fourteenth Amendments. This Court pointed out that "[r]ecently the Court of Appeals for the Fifth Circuit emphasized that 'it is 'difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of prisons.'"[106] This Court held that it is unlikely that Plaintiffs could establish a claim of subjective deliberate indifference.[107]

Plaintiffs in this case have failed to allege sufficient facts to state a claim under either the Eighth or Fourteenth Amendment. Plaintiffs do not allege sufficient facts to state a claim under the objective requirement of an Eighth Amendment claim. Plaintiffs have not alleged facts to show that they were subjected to "an objectively intolerable risk of harm." Plaintiffs make the conclusory allegation that they "suffer a substantial risk of serious harm to their health and safety due to the presence of, and spread of, COVID-19."[108] The Fifth Circuit has explained that "'[t]he 'incidence of diseases or infections, standing alone, do not 'imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks.' *Shepherd v. Dallas Cty.*, 591 F. 3d 445, 454 (5th Cir. 2009). Instead, the plaintiff must show a denial of "basic human needs.' *Ibid*"[109] Plaintiffs have not alleged facts to show that Sheriff Defendants denied them basic human needs.

---

[105] *Id.*
[106] Rec. Doc. 90 pages 10 and 11 citing *Valentine v. Collier,* 956 F. 3d 797, 803 (5th Cir. 2020) (citation omitted.)
[107] Rec. Doc. 90 pages 10 and 11
[108] Rec. Doc. 4 ¶ 156
[109] *Valentne v. Collier,* 956 F. 3d 797, 801 (5th Cir. 2020)

Further, Plaintiffs have not alleged facts to satisfy the second element of an Eighth Amendment claim: subjective deliberate indifference. Plaintiffs have not alleged any *facts* to show that the Sheriff Defendants subjectively believed their measures undertaken to address COVID-19 in the Jail were inadequate. Plaintiffs merely make conclusory allegations that "Defendants act with deliberate indifference towards Plaintiffs by failing to adequately safeguard their health and safety in the midst of a potential outbreak of a contagious, infectious disease."[110] However, a legally sufficient complaint "must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action."[111] Plaintiffs have failed to allege sufficient facts to state an Eighth Amendment claim against the Sheriff Defendants.

Plaintiffs have not alleged sufficient facts to state a claim under the Fourteenth Amendment. Plaintiffs have not alleged facts to show a pervasive pattern of serious deficiencies in providing them basic human needs. Further, Plaintiffs have not alleged facts to show that the Sheriff Defendants acted with deliberate indifference or that the Sheriff Defendants' response to COVID-19 in the Jail is not reasonably related to a legitimate government objective.

In support of their Fourteenth Amendment claim, Plaintiffs make the conclusory allegation that "Defendants established *de facto* policies denying Plaintiffs health care and adequate protections from COVID-19. The policies are not reasonably related to a legitimate governmental objective and are causing the violation of the Jail's pretrial detainees' constitutional rights."[112] Plaintiffs do not identify the *de facto* policies. Sheriff Defendants submit that the deliberate indifference standard applies to Plaintiffs' Fourteenth Amendment claims. Plaintiffs have not alleged any facts to show that the Sheriff Defendants subjectively believed their measures

---

[110] Rec. Doc. 4 ¶ 158
[111] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)
[112] Rec. Doc. 4 ¶152

undertaken to address COVID-19 in the Jail were inadequate. In addition, even if the deliberate indifference standard did not apply to Plaintiffs' Fourteenth Amendment claims, Plaintiffs do not allege facts to show that the steps taken by the Sheriff Defendants were not reasonably related to the legitimate government interest of the health and safety of those in the Jail. Plaintiffs have failed to allege sufficient facts to state a Fourteenth Amendment claim against the Sheriff Defendants.

## IV.    CONCLUSION

For all of the foregoing reasons, this Court should dismiss Plaintiffs' claims against the Sheriff Defendants with prejudice.

Respectfully submitted:

**ERLINGSON BANKS, PLLC**

_s/Catherine S. St. Pierre_
MARY G. ERLINGSON (#19562)
CATHERINE S. ST. PIERRE (#18419)
RACHEL M. ABADIE (#34413)
One American Place
301 Main Street, Suite 2110
Baton Rouge, Louisiana 70801
Telephone: (225) 218-4446
Facsimile: (225) 246-2876
cstpierre@erlingsonbanks.com
_Counsel for Sheriff Defendants_

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of July, 2020, a true and correct copy of the foregoing _Memorandum in Support of Motion to Dismiss_ was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system and/or via U.S. Postal Service to counsel of record.

Baton Rouge, Louisiana, this 28th day of July, 2020.

_s/Catherine S. St Pierre_
Catherine S. St. Pierre