UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLIFTON BELTON, JR., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | |
| **SHERIFF SID GAUTREAUX, IN HIS OFFICIAL CAPACITY AS SHERIFF OF EAST BATON ROUGE, ET AL.** | **NO. 20-00278-BAJ-SDJ** |

RULING AND ORDER

Before the Court are two motions to dismiss: the Motion To Dismiss Pursuant To Rule 12(b) (Doc. 92) by Defendants, Sheriff Sid J. Gautreaux, III, and Lt. Col. Dennis Grimes (the "Sheriff Defendants"); and the Motion to Dismiss (Doc. 104) by Defendant City of Baton Rouge/Parish of East Baton Rouge (the "City/Parish"). Collectively, Defendants' Motions seek wholesale dismissal of Plaintiffs' putative class action, with prejudice. Plaintiffs oppose Defendants' Motions. (Docs. 99, 110). Defendants have filed reply memoranda in further support of their respective Motions, (Docs. 103, 108), and Plaintiffs and Defendants have each submitted supplemental letters to the Court regarding recent factual and legal developments relevant to Plaintiffs' claims (Docs. 111, 112). For reasons to follow, Defendants' Motions will be granted, and Plaintiffs' action will be dismissed with prejudice.

I.  **ALLEGED FACTS**

Plaintiffs' proposed class action is one of many in this Circuit and around the nation alleging unconstitutional prison conditions wrought by the ongoing COVID-19

pandemic. For present purposes, the following allegations are accepted as true.

Plaintiffs consist of ten men who are, or have recently been,[1] incarcerated in the East Baton Rouge Parish Prison ("EBRPP"). (Doc. 4 at ¶¶ 16-25). They are all African-American, range in age from 21 to 60 years old, and many suffer from chronic health conditions including diabetes, high blood pressure, and heart disease. (*Id.*). Two have been convicted of criminal offenses and are serving prison sentences, (*id.* at ¶¶ 17-18), eight are awaiting trial (*id.* at ¶¶ 16, 19-25). Some are housed in the general population, (*id.* at ¶¶ 18, 19, 23-25), others are in solitary quarantine due to having been exposed to COVID-19 (*id.* at ¶¶ 17, 20-22). One Plaintiff (Jerry Bradley) alleges that he contracted COVID-19 while imprisoned. (*Id.* at ¶ 17). All allege that they are at substantially greater risk of contracting COVID-19 as a result of Defendants' failures to adequately safeguard prisoners against the virus.

Plaintiffs' Amended Complaint spans 168 paragraphs. Their chief accusations, however, are summed up in three paragraphs appearing near the beginning:

> The jail has made no efforts to implement the standard protective measures that medical experts have advised for all people. The jail does not practice or promote social distancing, does not adequately clean or disinfect common and high-touch areas, and otherwise leaves detained individuals without sufficient soap or masks to protect themselves; it provides inadequate medical care to detainees battling the coronavirus, and it has even stopped performing routine medical checks to track and treat transmissions of the virus, despite statements to the contrary in the media. The over 1,000 people still jailed at EBRPP continue to sleep less than three feet apart from each other; breathe the same contaminated air; share showers, toilets, and telephones; and congregate in enclosed spaces for mandated roll calls and pill calls.
>
> But, perhaps most shockingly, the jail has chosen to warehouse

---

[1] Since the filing of this action, two of the named Plaintiffs have been released to home-confinement pending trial, including lead Plaintiff Clifton Belton, Jr.

> detainees who test positive for or exhibit symptoms of COVID-19 in a building that has been condemned since 2018. Those individuals are confined in their cells for almost 24 hours every day without adequate access to the medical care they need.
>
> In short, the jail forces the individuals in its care to endure unconstitutional conditions that deny them the precautions and protections necessary to mitigate against the risks of COVID-19, most critically the ability to socially distance from those around them.

(*Id.* at ¶¶ 5-7).

As a result of these alleged conditions, Plaintiffs seek various forms of injunctive relief, including an order immediately releasing medically vulnerable prisoners to home confinement, and an order directing Defendants to improve their efforts to protect prisoners against COVID-19 through social distancing, and increased access to testing, masks, hand sanitizer, temperature checks, and personal hygiene and cleaning supplies. (*Id.* at pp. 62-63 (Prayer for Relief)).

Critically, even as Plaintiffs allege that Defendants have "made no efforts to implement the standard protective measures" against COVID-19, their Amended Complaint details multiple protective measures implemented by Defendants since the onset of the pandemic. These include: (1) closing the prison to outside visitors beginning in mid-March 2020, (Doc. 4 at ¶ 65); discontinuing all non-emergency off-site trips, (*id.*); reopening previously condemned portions of the prison to serve as isolation wings for prisoners testing positive for COVID-19, (*id.* at ¶ 109); "quarantining" the general population according to housing "line," (*id.* at ¶ 85); preventing prisoners from leaving their quarantined housing line except for medical care or removal to a COVID-19 isolation wing, (*id.*); testing prisoners for COVID-19, (*id.* at ¶ 105); removing prisoners testing positive for COVID-19 to an isolation wing,

3

and allowing such prisoners to return to the general population only after two successive negative COVID-19 tests, (*id.* at ¶ 124); providing meals to prisoners in their housing lines rather than the mess hall, (*id.* at ¶ 98); supplying masks to all prisoners or, in the absence of masks, cloth bandanas, (*id.* at ¶ 91); providing "limited cleaning supplies" to prisoners, (*id.* at ¶¶ 93, 114); providing soap to prisoners, (*id.* at ¶ 97); conducting universal temperature checks beginning in April 2020, (*id.* at ¶ 102); and providing personal protective equipment to prison staff, including masks, gloves, and body suits, (*id.* at ¶ 123).

## II. PROCEDURAL HISTORY

Lead plaintiff Clifton Belton, Jr. filed his original *pro se* Complaint on May 4, 2020. (Doc. 1). Thereafter, Mr. Belton obtained representation, and, through counsel, filed the Amended Class Action Complaint on May 27, 2020, joined by nine additional Plaintiffs. (Doc. 4).

The Amended Complaint seeks recognition of a class consisting of "all current and future persons held at the East Baton Rouge Parish Prison during the course of the COVID-19 pandemic" (the "Jail Class"). (Doc. 4 at ¶ 136). The Amended Complaint further seeks recognition of three subclasses: (1) members of the Jail Class that have not yet been convicted of an offense (the "Pretrial Subclass"); (2) members of the Jail Class that have been convicted of an offense and are serving sentences (the "Post-Conviction Subclass"); and (3) members of the Jail Class older than 65 years or suffering from pre-existing medical conditions putting them at higher risk of serious illness or death due to COVID-19 (the "Medically Vulnerable Subclass"). (*Id.* at ¶¶ 136-37).

Plaintiffs allege two distinct constitutional violations: (1) Defendants' failures to adequately protect prisoners against the COVID-19 pandemic have denied members of the Post-Conviction Subclass of their Eighth Amendment right to be free from cruel and unusual punishment (Count II); and (2) the same failures have denied members of the Pretrial Subclass of their Fourteenth Amendment right to due process (Count I). Additionally, based on the same alleged constitutional violations, the Medically Vulnerable Subclass seeks release to home confinement pursuant to the habeas corpus statute, 28 U.S.C. § 2241 (Counts III and IV).

The same day that they filed the Amended Complaint (May 27, 2020), Plaintiffs sought a temporary restraining order (TRO) requiring Defendants to immediately release all members of the Medically Vulnerable Subclass to home confinement. (*See* Doc. 5). On July 3, 2020, after multiple rounds of briefing and an evidentiary hearing, the Court denied Plaintiffs' request for a TRO. (Doc. 90). In relevant part, the Court's July 3 Order made a preliminary determination that Plaintiffs' claims were unlikely to succeed because Defendants' response to challenges posed by the COVID-19 pandemic belied Plaintiffs' claims of "subjective deliberate indifference." (Doc. 90 at 11). The Court explained:

> Defendants have clearly demonstrated that they have taken measures to implement precautions to protect inmates from the COVID-19 pandemic. They have closely reviewed CDC guidelines for prisons, implemented screening and hygiene procedures, distributed masks and cleaning supplies, and even reduced the prison population and released certain medically vulnerable prisoners, including Mr. Belton. This does not satisfy the requisite state of mind indicative of subjective deliberate indifference, which the Supreme Court has stated to be akin to recklessness. Though Petitioners may disagree whether these measures are enough, EBRPP has taken the initiative, consulted with

5

> professionals, devised, and incorporated safety protocols and education for its inmates. While the Court does not rule on the alleged Constitutional violations at this time, it finds that Petitioners have failed to demonstrate a substantial likelihood of success on the merits of their claims.

(*Id.*).

On July 28, 2020, the Sheriff Defendants filed their Motion to Dismiss. (Doc. 92). On October 23, 2020, the City/Parish followed with its Motion. (Doc. 104). The arguments raised in each Motion are the same. First, Defendants seek dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(1), contending that the Court lacks jurisdiction because Plaintiffs cannot show an imminent risk of harm and thus cannot establish standing. (Doc. 92-1 at 8-13; Doc. 104-2 at 4-8). Additionally, Defendants contend that any claims to immediate release must be dismissed because Plaintiffs have failed to exhaust their administrative remedies, and because, generally, a writ of habeas corpus under 28 U.S.C. § 2241 is reserved for cases alleging unconstitutional *cause* or *duration* of confinement, and is not available to plaintiffs challenging unconstitutional *conditions* of confinement. (Doc. 92-1 at 12-16; Doc. 104-2 at 8-13, 18-19).

In the alternative, Defendants seek dismissal under Rule 12(b)(6), arguing that Plaintiffs' constitutional claims fail because Plaintiffs cannot show that they were subjected to "an objectively intolerable risk of harm" resulting from Defendants' response to the COVID-19 pandemic, or that Defendants' response exhibits "subjective deliberate indifference." (Doc. 92-1 at 23-25; Doc. 104-2 at 15-18).

For reasons explained below, the Court determines that Defendants' jurisdictional challenges fail, but that Plaintiffs' action must nonetheless be

6

dismissed because the allegations in Plaintiffs' Amended Complaint defeat their assertions of "subjective deliberate indifference."

## III. LAW AND ANALYSIS

### A. Jurisdiction

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286–287 (5th Cir. 2012). Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Id.* A court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.*

Here, Defendants raise three jurisdictional attacks: Plaintiffs lack standing to pursue their claims; Plaintiffs have failed to exhaust their administrative remedies; and Plaintiffs cannot establish a right to immediate release under 28 U.S.C. § 2241. The Court addresses each argument in turn.

#### i. Standing

"Article III standing requires a plaintiff to show: (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *See Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) (quotation marks omitted). Defendants argue that Plaintiffs cannot show an injury-in-fact because "[t]here currently is no mass outbreak of COVID-19 at the Jail" and "Defendants have shown that they have successfully at this time quelled the outbreak of COVID-19 at the Jail." (Doc. 92-1 at 11).

7

Even accepting Defendants' assertions as true, their objection misses the mark. Plaintiffs' essential allegation is that they are at substantially greater risk of contracting COVID-19 due to Defendants' failures to safeguard prisoners against the virus. Allegations of increased risk of harm (or future injury) establish standing "if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, (2014). Undeniably, COVID-19 remains an active threat across the nation and throughout our state. This Court has previously acknowledged that prison environments are especially susceptible to COVID-19 outbreaks. *See Marlowe v. LeBlanc*, No. 18-cv-63, 2020 WL 1955303, at *2 (M.D. La. Apr. 23, 2020). Here, multiple Plaintiffs allege that they have been assigned to the EBRPP's COVID-19 solitary confinement lines due to having been exposed to the virus, and one Plaintiff alleges that he contracted COVID-19 while incarcerated.

Plaintiffs' allegations of increased risk of infection and future harm establish an injury in fact. Further, Plaintiffs allege that their increased risk is directly attributable to Defendants' actions and inactions, and clearly a judgment in Plaintiffs' favor requiring Defendants to increase their vigilance and/or release members of the Medically Vulnerable Subclass to home confinement will redress Plaintiffs' concerns. Standing is satisfied. *Cibolo Waste, Inc.*, 718 F.3d at 473.

### ii. Exhaustion

Next, Defendants contend that Plaintiffs' claims must be dismissed for having failed to exhaust administrative remedies. In the same breath, however, Defendants concede that "failure to exhaust administrative remedies is an affirmative defense

8

requiring the submission of evidence," (Doc. 92-1 at 2), and indicate that they shall "fil[e] a motion for summary judgment separate from this Motion to Dismiss asserting that Plaintiffs' claims should be dismissed because they failed to exhaust the available administrative remedies prior to filing suit." (*Id.*). In light of Defendants' admissions, the Court will reserve ruling on the issue of whether Plaintiffs adequately exhausted their administrative remedies prior to filing this lawsuit.

### iii.  Availability of Habeas Relief Under 28 U.S.C. § 2241

Finally, Defendants contend that the Court lacks jurisdiction to consider Plaintiffs' request for immediate release under 28 U.S.C. § 2241, because a writ of habeas corpus is available only for claims concerning unconstitutional cause of confinement, not unconstitutional conditions of confinement. Defendants' argument is rooted in the Court's July 3 Order, which, in relevant part, determined that Plaintiffs' complaints implicate the conditions at EBRPP, not the cause for their detention. (Doc. 90 at 8). On this basis, the Court further determined that Plaintiffs were unlikely to succeed on the merits of their claims because the U.S. Fifth Circuit Court of Appeals' has instructed that "habeas is not available to review questions unrelated to the cause of detention." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976) (denying writ of habeas corpus to refugees seeking to vacate administrative Orders of Exclusion and to force the Director of the Immigration Service to grant employment authorization because, "[s]imply stated, habeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose.").

9

After the Court entered its July 3 Order, the Fifth Circuit issued its decision in *Cheek v. Warden of Federal Medical Center*, which specifically held that a prisoner's "request for release to home confinement in the context of a global pandemic [is] properly brought as an application for a writ of habeas corpus under Section 2241 because a favorable ruling from the district court [will] accelerate his release." No. 20-10712, 2020 WL 6938364, at *2 (5th Cir. Nov. 24, 2020). The *Cheek* decision applies on all fours to the facts presented here, and clarifies that the Court does, in fact, have subject matter jurisdiction over Plaintiffs' habeas claims. As such, the Court may proceed to address the merits of Plaintiffs' claims.

### B. Merits

#### i. Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir.

2007). Importantly, however, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million*, Inc., 296 F.3d 376, 378 (5th Cir. 2002) (quotation marks omitted).

### ii. Discussion

As stated, Plaintiffs allege two distinct constitutional violations: (1) Defendants' failures to adequately protect prisoners against the COVID-19 pandemic have denied members of the Post-Conviction Subclass their Eighth Amendment right to be free from cruel and unusual punishment (Count II); and (2) the same failures have denied members of the Pretrial Subclass their Fourteenth Amendment right to due process (Count I). The Court addresses each claim in turn.

### a. Post-Conviction Plaintiffs

Following conviction, the Eighth Amendment requires prison officials to provide "humane conditions of confinement" with due regard for inmate health and safety. *Valentine v. Collier*, 978 F.3d 154, 162–63 (5th Cir. 2020) (*hereinafter* "*Valentine II*") (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 837 (1994)).

> To show a violation, inmates must prove that they were exposed "to a substantial risk of serious harm" and "that prison officials acted or failed to act with deliberate indifference to that risk." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006)). The presence of a substantial risk is an objective inquiry. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019). Deliberate indifference, however, is subjective; it requires a showing that prison officials had actual knowledge of a risk and disregarded it. *Id.* … "Deliberate indifference is an extremely high standard to meet." *Domino v. TDCJ*, 239 F.3d 752, 756 (5th Cir. 2001).

*Valentine II*, 978 F.3d at 162–63.

11

For present purposes, the Court finds that Plaintiffs' allegations establish that they have been exposed to a substantial risk of serious harm, thus satisfying the objective prong of the analysis. Indeed, the Fifth Circuit has now repeatedly affirmed the severe risk of harm that COVID-19 presents to prisoners, particularly prisoners whose age or underlying health condition renders them more susceptible to serious illness or death from the virus. *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020) (*hereinafter "Valentine I"*) ("There is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious or fatal harm to prison inmates."); *Marlowe v. LeBlanc*, 810 F. App'x 302, 305 (5th Cir. 2020) ("We do not question that COVID-19 presents a risk of serious harm to those confined in prisons, nor that Plaintiff, as a diabetic, is particularly vulnerable to the virus's effects."); *see also Valentine II*, 978 F.3d at 163 ("We share the district court's alarm at the toll of the virus.").

Nonetheless, Plaintiffs' Eighth Amendment claims must still fail because they cannot satisfy the subjective prong of the analysis. That is, they cannot show that Defendants have acted or failed to act with deliberate indifference to COVID-19. In fact, Plaintiffs' own allegations confirm the opposite: Defendants have implemented multiple measures to safeguard prisoners against the virus, to include closing the prison to outside visitors; quarantining the general population; establishing isolation wings for prisoners testing positive for COVID-19; conducting temperature checks; supplying face coverings, soap, and cleaning supplies to prisoners; and providing personal protective equipment to prison staff. As indicated in the Court's July 3

Order, Plaintiffs obviously take issue with the efficacy of Defendants' efforts, and contend that more could be done, but the law is clear that "'mere "disagreement" with [prison officials'] medical decisions does not establish deliberate indifference." *Valentine I*, 956 F.3d at 803.

Based on Plaintiffs' allegations detailing measures Defendants have implemented to abate the risks of COVID-19, and guided by the Fifth Circuit's COVID-19 jurisprudence, the Court is compelled to conclude that Defendants have responded reasonably to the virus, and, accordingly, that Plaintiffs cannot show that they acted with deliberate indifference to its threat. *Cf. Valentine II*, 978 F.3d at 164 (determining that plaintiffs were unlikely to establish deliberate indifference where prison officials took "affirmative steps … to contain the virus"); *Marlowe*, 810 F. App'x at 305 (same); *Valentine I*, 956 F.3d at 802 (same). Accordingly, Plaintiffs' Eighth Amendment claims must fail.[2]

---

[2] The Court pauses to specifically address Plaintiffs' allegations regarding Defendants' decision to establish temporary COVID-19 isolation wings in previously condemned portions of EBRPP. (*See* Doc. 4 at ¶ 109; Doc. 99 at 24). Certainly, forcing detainees to live in condemned quarters raises legitimate concerns and creates the possibility of a constitutional violation. *See Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) ("This court has previously held that filthy cell conditions may constitute an Eighth Amendment violation." (citing authorities)). Here, however, even these allegations cannot save Plaintiffs' claims from dismissal for two reasons.

   First, Plaintiffs allege that a detainee's assignment to the condemned quarantine lines is temporary, lasting no longer than it takes to receive two successive negative COVID-19 tests. The Supreme Court has instructed that temporary confinement to unsanitary quarters alone does not necessarily establish the objective element of conditions of confinement claim. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) ("The Supreme Court has noted that 'the length of confinement cannot be ignored. … A filthy, overcrowded cell … might be tolerable for a few days and intolerably cruel for weeks or months." (quoting *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978)).

   Second, even if the risks posed by temporarily housing inmates in a condemned portion of the prison are objectively intolerable, the Court must still look to Defendants' motivations for placing detainees there. *Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d

13

### b. Pre-Trial Detainee Plaintiffs

Whereas the Eighth Amendment protects the rights of convicted prisoners, "[t]he constitutional rights of a pretrial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Cleveland v. Gautreaux*, 198 F. Supp. 3d 717, 733 (M.D. La. 2016) (deGravelles, J.) (citing *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999)). "The Fourteenth Amendment requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care." *Estate of Henson v. Krajca*, 440 F. App'x 341, 343 (5th Cir. 2011) (quoting *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 650 (5th Cir. 1996) (*en banc*)).

"[C]onstitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Cleveland*, 198 F. Supp. 3d at 733 (quoting *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009)). Here, Plaintiffs proceed under both theories. (Doc. 99 at 22 ("Plaintiffs challenge their unconstitutional treatment under both a conditions-of-confinement theory and an episodic-act-or-omission theory.")). Regardless which theory Plaintiffs choose, however, in order to prevail they must

---

577, 589 (5th Cir. 2004) ("In order to establish an Eighth Amendment conditions of confinement claim, Burleson would have to establish 'first, that the deprivation alleged was sufficiently serious (i.e., an official's act or omission must have resulted in the denial of 'the minimal civilized measure of life's necessities'); and second, that the prison official possessed a sufficiently culpable state of mind.'" (quoting *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001)). Here, as discussed, Plaintiffs' allegations establish that Defendants' motivation is to create a quarantined space for infected detainees, thus reducing the risk of spread to other detainees. In other words, again, Defendants are not deliberately indifferent to the risks posed by COVID-19; rather, they are expressly motivated by a desire to abate these risks. As such, Plaintiffs are unable to establish deliberate indifference.

14

show that Defendants acted with deliberate indifference, or its "functional equivalent." *See Hare,* 74 F.3d at 636 (an "episodic act or omission" claim requires a pretrial detainee plaintiff to prove that prison officials "acted or failed to act with subjective deliberate indifference to the detainee's rights"); *Duvall v. Dallas Cty., Tex.*, 631 F.3d 203, 207 (5th Cir. 2011) ("As this court recognized while sitting *en banc,* 'the reasonable-relationship test employed in conditions cases is functionally equivalent to the deliberate indifference standard employed in episodic cases.'" (quoting *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997) (*en banc*)).

Plaintiffs' allegations underlying their Eighth Amendment claims are the same as their allegations underlying their Fourteenth Amendment claims. For reasons previously explained, Plaintiffs own allegations defeat their assertions of Defendants' subjective deliberate indifference for purposes of their Eighth Amendment claims; the same analysis applies equally to Plaintiffs' Fourteenth Amendment claims. *See Hare*, 74 F.3d at 648 ("Though *Farmer* dealt specifically with a prison official's duty under the Eighth Amendment to provide a convicted inmate with humane conditions of confinement, we conclude that its subjective definition of deliberate indifference provides the appropriate standard for measuring the duty owed to pretrial detainees under the Due Process Clause."). Thus, again, Plaintiffs' claims must fail.

### C. Amendment

When a complaint fails to state a claim, the Court should generally give the plaintiff a chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Great Plains Trust Co. v.*

*Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable"); *see also Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) ("Rule 15(a) requires a trial court to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend." (internal quotations omitted)). Here, the Court determines that amendment would be futile in light of Plaintiffs' allegations defeating their assertions of Defendants' subjective deliberate indifference. The Court will dismiss Plaintiffs' action with prejudice, without granting leave to amend.

### IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motions to Dismiss (Docs. 92, 104) are **GRANTED**, and that the above-captioned action is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion For Class Certification (Doc. 8) is **TERMINATED**.

The Court shall issue a Final Judgment separately.

Baton Rouge, Louisiana, this 4th day of February, 2021

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**